1:19mj3065

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Dave Carney, Detective with the City of Westlake Police Department, currently assigned to the Northern Ohio Law Enforcement Task Force (hereinafter referred to as NOLETF) hereinafter referred to as Affiant, being duly sworn, do depose and state that:

### INTRODUCTION

1.  As a Task Force Officer of the FBI, your Affiant is an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). Your Affiant is empowered to conduct investigations and to make arrests for federal felony offenses.

2.  Your Affiant has been employed by the Westlake Police Department since September, 1992. Your Affiant has been assigned to the NOLETF, a Cleveland based, multi-agency, federal, state, and local law enforcement drug task force since 2010. Your Affiant has participated in investigations targeting organizations involved in drug trafficking offenses in the Northern District of Ohio and elsewhere. Prior to this assignment, your Affiant was assigned to investigate drug-related offenses as well as other general criminal offenses in the State of Ohio as well as the Northern District of Ohio. These crimes were prosecuted in state court as well as federal court. Your Affiant is also a certified peace officer in the State of Ohio.

3.  Your Affiant is aware that it is common for drug traffickers to secrete drugs, contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and vehicles, the residences and vehicles of their associates, and of family members for ready access and to conceal them from law enforcement authorities.

4.  As a result of your Affiant's personal participation in this investigation and reports made to your Affiant by other Special Agents of the FBI and other state and local law enforcement officers, witnesses and reliable confidential sources, your Affiant is familiar with the circumstances and offenses described in this Affidavit.

5. As a Police Officer with the Westlake, Ohio, Police Department, your Affiant received basic drug training with The Ohio State Highway Patrol Training Academy (OSP). Your Affiant received three months of field training by officers of the Westlake Police Department. During this time, your Affiant participated in routine police functions, including but not limited to investigating drug related offenses. Your Affiant was assigned to the Northern Ohio Law Enforcement Task Force (NOLETF) in 2010. Your Affiant has received basic narcotic investigation training during which basic and advanced drug-related investigation techniques were conducted, including, but not limited to: surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation. Your Affiant receives annual training at the Westlake, Ohio, Police Department regarding law enforcement matters, including matters relating to drug trafficking. Your Affiant has participated in all of the usual methods of investigation including, but not limited to: visual surveillance, questioning witnesses, and analyzing evidence. Your Affiant has been involved in drug-related arrests. Your Affiant has planned and executed search warrants resulting in the seizure of drugs, their proceeds, weapons, and drug preparation tools. Your Affiant has supervised the activities of informants who have provided information concerning controlled substances and organized criminal activities, purchased controlled substances, and supervised consensual monitoring in connection with these investigations. Your Affiant has previously participated in Title III wiretaps and investigations.

6. Based on training and experience Affiant is aware drug traffickers often transport contraband in vehicles that are utilized to transport the contraband into and across the United States.  The contraband is then stored at different locations.  The practice of storing contraband and money at locations makes it necessary for the drug trafficker to possess and transport

2

contraband and money to and from storage locations, including storage lockers, also sometimes referred to as "stash houses."

7. Based on the above training and experience, your Affiant is familiar with the *modus operandi* of persons involved in the illegal distribution of controlled substances, as well as the terminology used by persons involved in the illegal distribution of controlled substances. Your Affiant is aware that persons involved in the illegal distribution of controlled substances nearly always attempt to conceal their identities, the location at which drug transactions take place, and the flow of proceeds derived from their illicit drug transactions into "clean" currency. Your Affiant knows that individuals engaged in organized drug distribution and sales maintain extensive contact with persons throughout the United States, as well as foreign countries from which they receive drugs and paraphernalia, drug information, and information on others in the local area who are competing in the unlawful activity of drug distribution. Your Affiant also knows the following related to drug traffickers:

a. That narcotic traffickers must maintain on hand large amounts of U.S. Currency in order to finance their on-going narcotic business and often keep this currency in their possession;

b. That drug traffickers maintain books, records, receipts, notes, ledgers, and similar items of their drug trafficking activity where the drug traffickers have ready access to them;

c. That persons involved in drug trafficking conceal illegal controlled substances, large amounts of currency, financial instruments, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining,

3

transferring, secreting, or spending large sums of money made from engaging in narcotics trafficking activities in their residences or other locations associated with them.

d. That drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in the drug trafficking organization;

e. That persons involved in drug trafficking conceal in their residences ("stash houses") safes, large amounts of currency, financial instruments, precious metals and gems, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money derived from engaging in narcotics trafficking activities;

f. That when drug traffickers amass large amounts of proceeds from the sale of drugs, they attempt to legitimize these profits through money-laundering activities and that they often keep records of such activity (e.g. bank records, ledgers, business records, withdrawal and deposit slips, etc.) at their residences;

g. That drug traffickers commonly have in their possession at their residences and/or their businesses, firearms, including but not be limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure a drug trafficker's property; and

    h.   That drug traffickers often maintain records linking them to their trafficking and that these records may include records of narcotic sales, debts, shipments, which may be contained in electronic organizers, pagers, cellular telephones, computers [hard drives], CD ROMS, telephone books which identify customers and/or co-conspirators, and photographs of co-conspirators.  Even if off-site locations are used to store records, some evidence such as safety deposit keys, records, and receipts and/ or documents regarding mini-warehouses, mail and answering services, etc., will be present.

## BASIS OF INFORMATION

8.    Your Affiant is familiar with the facts and circumstances of the offenses described in this Affidavit based upon your Affiant's personal participation in the investigation of LERON ATWATER, as well as through information obtained from other law enforcement agencies, witnesses, and reliable sources.

9.    Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by FBI Agents or other law enforcement officers.  Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom your Affiant has spoken or whose report your Affiant has read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth your Affiant's observations but rather has been provided directly or indirectly by FBI Agents or other law enforcement officers who conducted such surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data

System (LEADS); from Thompson Reuters, a law enforcement credit header database (CLEAR); from the State of Ohio or the National Crime Information Center (NCIC) computers; or by the Ohio Law Enforcement Gateway database (OHLEG) by members herein described.

10. Since the Affidavit is being submitted for the limited purpose of supporting criminal complaints and arrest warrant for LERON ATWATER your Affiant has not included each and every fact known concerning this investigation. Your Affiant has set forth only the facts that are believed to be necessary to establish the foundation for a criminal complaint.

11. Based upon the information contained in this Affidavit, I submit there is probable cause to believe that on or about November 27, 2018, in the Northern District of Ohio, LERON ATWATER committed violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B) – Possession with Intent to Distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance and fentanyl, a Schedule II controlled substance, and Title 21, United States Code, Section 846 – conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance and fentanyl, a Schedule II controlled substance.

**FACTS AND CIRCUMSTANCES REGUARDING PROBABLE CAUSE**

12. Your Affiant received information from City of Westlake Police Department Patrolman Ballinger during the course of this investigation.

13. Westlake Patrolman Ballinger explained that on November 27, 2018 at 0203 hours he and Westlake Patrolman Craig were dispatched to the Extended Stay at 30360 Clemens, Westlake Ohio due to a previous complaint of an assault that had occurred. The suspect in the

assault was LERON ATWATER. The caller explained ATWATER was back at the property attempting to get a key to gain access to the rented room of the victim.

14. Patrolman Ballinger had identified the suspect prior to arriving at the Extended Stay. The suspect was identified as LERON ATWATER. ATWATER was found to have a bench warrant for his arrest due to failure to appear from Elyria Police Department from a previous charge. ATWATER was also noted to have a "Caution" on the warrant due to having a violent criminal history including drug trafficking and weapons violations.

15. While en route to the Extended Stay, Patrolman Ballinger recognized the suspect vehicle and conducted a traffic stop as the vehicle was entering Interstate 90 west bound from Crocker Rd. in Westlake, Ohio. ATWATER was the driver of the vehicle and was arrested shortly after the traffic stop due to the warrant from Elyria Police Department. ATWATER was mirandized at this time. Patrolman Ballinger spoke with 2 passengers in the vehicle that was driven by ATWATER: LEMMI EDWARD JONES and DENISE JANAI ISOM. JONES nor ISOM had valid driving privileges. ISOM was also arrested on a warrant from the Lorain Police Department during this traffic stop. JONES identified himself as ATWATER's brother.

16. During an administrative inventory of the vehicle at the time of the traffic stop, Patrolman Ballinger found a small amount of marihuana in the front console and a medium sized blue drawstring bag that contained six plastic bags of brown powder which was suspected Heroin. ATWATER asked to speak to narcotics detectives while still at the scene of the traffic stop. ATWATER also asked if the case was going to "go Federal?"

17. The brown powder which was seized during the inventory search was sent to the Bureau of Criminal Investigations for lab analysis. The results of the lab analysis shows a positive test result for Heroin and Fentanyl with a total weight of 436.05 grams.

18. As noted, ATWATER was given his Miranda warnings at the time of the traffic stop. Later, ATWATER agreed to speak with your affiant regarding the substances located in the vehicle. ATWATER explained to your affiant that his heroin supplier was from Lorain County, and that the supplier was with ATWATER shortly before the traffic stop. The heroin supplier wanted ATWATER to get a hotel room for the two of them to sell heroin from. ATWATER agreed to get the hotel room using the name of a female friend, who ATWATER later got into an altercation with. ATWATER explained that, once the altercation took place, the heroin supplier wanted ATWATER to get him out of the area "since it was so hot." Through my training and experience, I believe that the statement regarding the area being "hot" is a reference to police presence in an area.

19. ATWATER went on to explain that he dropped the heroin supplier off at the BP gas station at the intersection of Crocker and Clemens streets. Shortly thereafter, ATWATER was pulled over by Patrolman Ballinger. ATWATER explained that he knew the heroin supplier brought the heroin with him when they left the hotel, but that he never though the heroin supplier would leave the heroin inside the vehicle once ATWATER dropped him off.

20. ATWATER explained that he uses two cell phones – one for "work," and one for friends and family. I am aware, through my training and experience, that drug traffickers often refer to drug trafficking or drug dealing as "work," and that a work phone is one used to communicate with suppliers and/or customers. ATWATER explained that his "work" phone was with his brother in Lorain County at the time that he was stopped, such that his brother could service customers. The friends and family phone was passed to LEMMI EDWARD JONES during the traffic stop.

21. During our conversation, ATWATER'S main concerns were whether this case would be charged in Federal Court, and what amount of bond he would get.

22. Based upon the information contained in this Affidavit, I submit there is probable cause to believe that on or about November 27, 2018 in the Northern District of Ohio, LERON ATWATER committed violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B) – Possession with Intent to Distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance and fentanyl, a Schedule II controlled substance, and Title 21, United States Code, Section 846 – conspiracy to possess with intent to distribute heroin, a Schedule I controlled substance and fentanyl, a Schedule II controlled substance.

          *S/DAVE CARNEY - BY PERMISSION*
          TASK FORCE OFFICER DAVE CARNEY
          WESTLAKE POLICE DEPARTMENT, NOLETF

SUBSCRIBED AND SWORN TO ME THIS 25TH DAY OR MARCH, 2019 VIA TELEPHONE AFTER SUBMISSION BY
RELIABLE ELECTRONIC MEANS. FED. R. CRIM. P. 4.1 and 41(d)(3).

THOMAS M. PARKER
U.S. MAGISTRATE JUDGE